UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL J. GAWRYS, | ) | NO. EDCV 15-258 -KS |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| _____ | ) | |

**INTRODUCTION**

Daniel J. Gawrys ("Plaintiff") filed a Complaint on February 10, 2015, seeking review of the denial of his application for supplemental security income ("SSI"). (Dkt. No 1.) On September 8, 2015, Defendant filed an Answer to the Complaint (Dkt. No. 20) and a Certified Administrative Record (Dkt. No. 21). On August 14 and 26, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkts. No. 17, 18.) On December 17, 2015, the parties filed a Joint Stipulation ("Joint Stip.). (Dkt. No. 25.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On July 13, 2011, Plaintiff protectively filed an application for SSI, alleging disability beginning December 15, 2006. (Administrative Record ("AR") 20.) His application was initially denied on December 30, 2011 (AR 124-130) and on reconsideration on February 4, 2013 (AR 91). Plaintiff was represented by counsel and testified before an Administrative Law Judge ("ALJ") at a hearing held on September 23, 2013. (AR 24-42.) Also testifying at the hearing was Vocational Expert ("VE") Sandra Moore Fioretti. (AR 39-41). No other witnesses testified at the hearing. On September 27, 2013, the ALJ denied Plaintiff's application, concluding Plaintiff was not under a disability since July 13, 2011, the date the application was filed. (AR 11-19.) On November 5, 2013, Plaintiff filed a written request for review of the hearing decision. (AR 7.) The Appeals Council denied review on December 10, 2014. (AR 1-4.)

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five step sequential evaluation process outlined in 20 CFR § 416.920(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since July 13, 2011 (the application date).[1] (AR 13.) The ALJ next found that Plaintiff had the following severe impairments: right inguinal hernia; schizoaffective disorder, depressed type; and a cognitive disorder (20 CFR § 416.920(c)). (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix. (*Id.*) At the next sequential step, the ALJ found that Plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR § 416.967(b) except:

---

[1] Plaintiff filed a prior application for SSI on April 24, 2007, in which he alleged disability beginning November 10, 2006. (AR 46.) Following a hearing held on May 18, 2009, the 2007 application was denied by an ALJ on August 10, 2009. (AR 43-53.)

> [Plaintiff] is limited to simple and repetitive tasks; non-public environment; no fast-paced work, such as conveyor-belt work; work also must be limited to non-intense interaction with coworkers and supervisors; as well as work not requiring hypervigilance or responsibility for the safety of others.

(AR 15.) The ALJ determined that Plaintiff had no past relevant work. (*Id.* at 18.) After considering Plaintiff's age, education, work experience and RFC, and relying on the VE's testimony, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as bench assembler (DOT$^2$ 706.684-042), toy assembler (DOT 731.687-034), and inspector/hand packager (DOT 559.687-074) – all of which are categorized as light, unskilled occupations. (*Id.* at 19.) On that basis, the ALJ concluded that Plaintiff has not been under a disability since July 13, 2011, the date he filed his application in this case. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

---

[2] *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).

3

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn,* 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

**I. Disputed Issues**

Plaintiff raises two issues in his Complaint:

(1) Whether the ALJ properly determined that Plaintiff could perform the alternative work; and

(2) Whether the ALJ properly considered the opinions of treating psychiatrist Steve Eklund, M.D.

4

(Joint Stip. at 4.)

**II.  The ALJ Properly Determined that Plaintiff Could Perform Alternative Work**

Plaintiff argues that the ALJ's determination at step five of the evaluative process that Plaintiff can perform alternative work is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ failed to properly resolve conflicts in the record where the medical record contained opinions "identifying some type of limitation [in Plaintiff's] dealing with co-workers and supervisors," but the ALJ only limited Plaintiff to "*non-intense* interaction with coworkers and supervisors." (Joint Stip. at 6-7 (italics added).) Further, Plaintiff argues that the ALJ did not provide a definition for "non-intense" and failed to adhere to the agency's Program Operations Manual System ("POMS") guidelines regarding mental abilities critical for performing unskilled work. (*Id.* at 7-8.)

Defendant responds that most of the medical records Plaintiff cites regarding his mental limitations pre-date the application period and merited "little weight." (*Id.* at 9). In addition, Defendant argues that the ALJ properly incorporated Plaintiff's mental limitations into the determination that Plaintiff could perform alternative work. (*Id.* at 10.) For the reasons discussed below, the Court agrees.

**A.  Applicable Legal Standard**

In the five step sequential process for determining whether a claimant is disabled, the burden of proof is on the claimant at steps one to four, but shifts to the Commissioner at step five. *Bustamante v. Massanari,* 262 F.3d 649, 953-54 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). When determining whether an individual is disabled, the ALJ must consider all the medical opinions in the claimant's case file. 20 CFR § 416.927(b); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all

5

medical opinion evidence."). While the ALJ is not obligated to discuss all the evidence presented to him, an ALJ must "explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). When there is conflicting medical evidence in the record, "the ALJ must provide 'specific and legitimate' reasons for rejecting the opinion of a treating or examining medical source." *See Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983).

### B. The ALJ Did Not Err in Making the Alternative Work Determination

Here, the ALJ noted that the "period at issue begins on the application date of July 13, 2011." (AR 16.) After considering all of Plaintiff's symptoms and all of the medical opinions in the record, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (AR 16.)[3] The ALJ "read and considered the entire medical record," including records that pre-dated the application date, but he found these earlier records "of limited usefulness" and assigned these records "little weight." (*Id.*) Nonetheless, the ALJ gave "great weight" to a psychological consultative examination dated May 23, 2010 by Dr. Kim Goldman. The ALJ explained that Dr. Goldman's report was "the only exhibit that contains actual cognitive testing" and the ALJ found this testing "relevant to the issue of disability in this case." (AR 17-18.)

In his May 23, 2010 assessment, Dr. Goldman opined that Plaintiff was moderately impaired in his ability to respond appropriately to coworkers, supervisors, and the public. (AR 257.) Dr. Goldman also opined that Plaintiff's "ability to understand carry out and remember detailed instructions and complex tasks is mildly impaired due to depression and borderline intellectual functioning. His ability to respond appropriately to coworkers,

---

[3] The ALJ also found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible," but Plaintiff does not challenge the ALJ's credibility assessment.

6

supervisors and the public is moderately impaired due to depression. His ability to respond appropriately to usual work situations and deal with changes in a routine work setting is moderately impaired due to depression." (AR 257.) In addition, Dr. Goldman gave Plaintiff a GAF[4] score of 61. (*Id.*)

Plaintiff points to other earlier opinions in the record that identify "some type of limitation in dealing with co-workers and supervisors," including the May 24, 2007 opinion of treating psychiatrist Dr. Steve Eklund, which indicated that Plaintiff had "severe" impairment in his ability to respond appropriately to supervision and to co-workers. (AR 229.) Three years later, on February 19, 2010, Dr. Eklund indicated that Plaintiff only had "moderate" limitation in his ability to respond appropriately to supervision and to co-workers. (AR 308.) A month after that, in March 2010, Dr. Eklund opined that Plaintiff "would be stressed out in the workplace." (*Id.* 249.) Dr. Eklund's March 2010 opinions were provided in brief written responses to questions contained in a Mental Disorder Questionnaire form and did not include any cognitive testing. (*See id.* 246-50.)

On March 15, 2009, Dr. Goldman opined that Plaintiff's ability "to interact appropriately with the public, supervisors and coworkers is mildly to moderately impaired due to depression and associated anxiety." (AR 242.) In the same report, Dr. Goldman also opined that Plaintiff's ability to respond appropriately to work pressures in a usual work situation and respond appropriately to changes in a routine work setting is mildly to moderately impaired[.]" (*Id.*) Dr. Goldman's 2009 findings are similar to the opinions of consultative examiner Ernest A. Bagner III, who performed a complete psychiatric

---

[4] GAF refers to "Global Assessment of Functioning," a numeric scale (1-100) used by mental health practitioners to rate subjectively the social, occupational, and psychological functioning of adults, usually expressed in a range. *See* Diagnostic and Statistical Manual of Mental Disorders (DSM)-IV, at 34 (4th ed. 2000). As listed in the DSM-IV, a GAF score of 70-61 reflects "some mild symptoms . . . OR some difficulty in social or occupational functioning," while a score of 60-51 reflects "Moderate symptoms . . OR moderate difficulty in social or occupational functioning." (*Id*.) In September 2011, Dr. Bagner gave Plaintiff a GAF score of 60. (AR 315).

7

evaluation of Plaintiff in connection with the SSI application at issue, and on September 30, 2011, found Plaintiff's "ability to interact appropriately with the public, co-workers and supervisors was mildly limited." (*Id*. 315.) In November 2012, Dr. Bagner submitted a further psychiatric assessment in which he indicated that Plaintiff's ability to interact appropriately with the public, co-workers and supervisors was "moderately limited." (*Id*. 325.) Based on this record, Plaintiff argues that the alternative occupations identified in the ALJ decision are inconsistent with the ALJ's RFC limitation of non-intense interactions with supervisors. (Joint Stip. at 8.) The Court finds no inconsistency between the record findings and the ALJ's RFC limitations.

As an initial matter, contemporaneous medical records are the most probative in a disability analysis. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (noting the most recent medical report is the most probative) (citing *Stone v. Heckler*, 761 F. 2d. 530, 532 (9th Cir. 1985)). Many of the records Plaintiff cites pre-date the relevant application period. (*See e.g.,* AR 229, 230, 242, 249, 308, and 257.) Even so, as noted above, these records are largely consistent in showing mild to moderate limitations in Plaintiff's ability to interact appropriately with supervisors and co-workers. Only Dr. Eklund's 2007 assessment found a "severe limitation" in Plaintiff's ability to respond appropriately to supervision and to co-workers. (AR 229.) Those opinions were given little weight when considered in connection with Plaintiff's 2009 SSI application. (*Id.* 51).[5]

The ALJ specifically noted that he read and considered the entire medical record including the materials predating the July 13, 2011 application date. (AR 16.) The ALJ explained that he accorded little weight to Dr. Eklund's 2007 report because "these exhibits were discussed and analyzed in a prior and final ALJ decision dated August 13, 2009." (*Id.*

---

[5] Dr. Eklund's 2007 opinions were considered in connection with Plaintiff's SSI application in 2009 and in that case, the ALJ gave little weight to Dr. Eklund's opinion where they were found to be "unsupported by his own records as well as others who have examined and tested [Plaintiff]." (AR 51.)

8

16.) Plaintiff fails to show that the RFC limiting Plaintiff to a non-public environment and non-intense interaction with coworkers and supervisors is inconsistent with the opinions of Dr. Goldman or Dr. Bagner or that the ALJ's RFC determination is not supported by substantial evidence. Indeed, the ALJ gave great weight to Dr. Bagner's opinions. (*Id.* 15, 17.)[6]

Plaintiff argues that the Program Operations Manual System ("POMS") list of mental abilities necessary for performing unskilled work shows a conflict between the RFC's limitation of non-intense interaction with coworkers and supervisors and the alternative occupations identified in step five. (Joint Stip. at 7-8.) In support of this argument, Plaintiff points to Social Security Ruling 13-2, which he concedes deals specifically with drugs and alcohol. (*Id*. at 7.) The opening sentence of the ruling asserts the unremarkable proposition that agency adjudication must follow agency policy, including POMS. (*Id*.) The segment of POMS that Plaintiff relies upon notes that a "claimant must be able to accept instructions and respond appropriately to criticism from supervisors." POMS DI 25020.010B.3.

The only support Plaintiff offers for the thesis that the POMS guidelines somehow evidence a conflict between Plaintiff's RFC limitation and the alternative occupations the ALJ identified at step five, is a definition of "non-intense" that cobbles together dictionary definitions of "non" and "intense. " (*See* Joint Stip. at 8.) Plaintiff then posits that, based on this definition, the "ALJ's limitation of non-intense interactions with the supervisor[] requires the supervisor to give [workplace] criticism in such a manner that is counter intuitive" and therefore in violation of POMS requirements. (Joint Stip. at 8.) This argument is convoluted at best and lacks merit.

---

[6] Nor does Plaintiff point to any evidence during the relevant time period that supports Dr. Eklund's 2007 opinion that Plaintiff had severe impairment in his ability to respond appropriately to supervision and to co-workers.

Nothing in the record evidence suggests that Plaintiff is wholly unable to function in the work place, only that he has limitations in his ability to interact appropriately with supervisors and co-workers. The ALJ's RFC determination that Plaintiff should be limited to non-intense interactions with supervisors is entirely consistent with Plaintiff's documented limitations. Nothing in the portion of POMS cited by Plaintiff is inconsistent with or undercuts the ALJ's RFC determination. Furthermore, while the agency must follow POMS guidelines, the Ninth Circuit has held that POMS, an internal procedure manual, does not impose judicially enforceable duties on an ALJ. *See Lowery v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (citation omitted).

Accordingly, the Court finds that the ALJ met the necessary burden at step five and the determination that Plaintiff, based on the RFC determination, can perform the identified alternative occupations is supported by substantial evidence.

**III. ALJ Properly Considered Dr. Eklund's Opinions**

Plaintiff next argues that the ALJ failed to properly consider the opinions of Dr. Eklund, Plaintiff's treating psychiatrist. (Joint Stip. at 11.) As noted above, Dr. Eklund provided several opinions in connection with Plaintiff's SSI applications: on May 24, 2007 (AR 229); February 3, 2009 (AR 236-37); February 19, 2010 ( AR 308-09); and March 9, 2010 (AR. 249-50).

**A. Applicable Legal Standard**

A treating physician's opinions are generally given "more weight than the opinions of doctors who do not treat the claimant." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Indeed, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with other substantial evidence in the record. *Orn,* 495 F.3d

at 631-32. "The ALJ may not reject the opinion of a treating physician, even it if is contradicted by the opinions of other doctors, without providing specific and legitimate reasons supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ's consideration of Dr. Eklund's opinions is supported by substantial evidence.

### B.  **ALJ's Analysis of Dr. Eklund's Opinions**

As discussed above, the Commissioner considered Dr. Eklund's May 24, 2007 opinions in connection with Plaintiff's SSI application in 2009 and, in that case, the ALJ gave little weight to Dr. Eklund's opinion because they were found to be "unsupported by his own records as well as others who have examined and tested [Plaintiff]." (AR 51.) The 2009 decision did not accept or reject Dr. Eklund's opinions dated February 3, 2009, February 19, 2010, and March 9, 2010. Dr. Eklund's February 3, 2009 opinions were rendered in a 2-page Work Capacity Evaluation (Mental), where he determined that Plaintiff had "marked" limitations in his "ability to interact appropriately with the general public" and "[t]he ability to accept instructions and respond appropriately to criticism from supervisors." (AR 236-37.) The February 19, 2010 report indicated that Plaintiff had moderate limitations in his ability to respond appropriately to supervision and to coworkers. (AR. 308.) In March 2010, Dr. Eklund provided a one sentence notation that Plaintiff "would be stressed out in the workplace." (AR 249.) The February and March 2010 opinions post-date the August 13, 2009 denial of Plaintiff's earlier SSI application and, therefore, were not part of the record in the earlier decision. (*See* AR 46-53.)

Plaintiff argues that the 2013 denial should be reversed because it improperly relied upon the 2009 unfavorable decision when that prior decision did not address all of the opinions given by Dr. Eklund. (Joint Stip. at 14.) The Court disagrees. In the current decision, the ALJ states that he considered the *entire* medical record (AR 15), which

11

includes both Dr. Eklund's opinions addressed in the 2009 adverse decision and the additional evidence provided in the other three Eklund reports as well.

The ALJ is not obligated to discuss all the evidence presented to him, an ALJ must "explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). When there is conflicting medical evidence in the record, "the ALJ must provide 'specific and legitimate' reasons for rejecting the opinion of a treating or examining medical source." *See Murray v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983).

The ALJ satisfied that requirement here by explaining precisely why he gave little weight to the medical opinions of Dr. Eklund that predate the relevant application period, while giving great weight to the 2010 opinions of Dr. Goldman because those opinions contained actual cognitive testing. (AR 16-17.) Indeed, the ALJ explained that the documents in the file for treatment prior to the July 13, 2011 application date were "of limited usefulness." (*Id.*) With respect to the two 2010 opinions that fell between the 2009 adverse decision and the current application period, those opinions are not contradicted by other evidence in the record. In February 2010, Dr. Eklund found Plaintiff only had moderate limitations his ability to respond appropriately to supervision and to coworkers. (AR 308.) Dr. Eklund's report also included extensive records of Plaintiff's prescribed medication for depression, including Zoloft, Seroquel and Celexa. (*Id.* 307.) One can reasonably infer that between 2007 and 2010, consistent with Plaintiff's own testimony, that the medications may have helped "a little bit." (*See id.* 37.) In March 2010, Dr. Eklund wrote that Plaintiff "would be stressed out in the workplace" without providing any elaboration or explanation. (*Id.* 249.)

In addition, the ALJ noted with respect to Plaintiff's mental impairments, that he had "very little treatment records for this period at issue." (AR 16.) After the application date,

Plaintiff was seen by his treating psychiatrist on August 5, 2011 at the Barstow Counseling. (AR 260.) He is next seen in May 2012 by psychiatrist Aubrey King, M.D. for depression and problems sleeping. (*Id.* 321.) The ALJ had "no additional treatment records for review." (*Id.* 16.) The ALJ then went on to discuss the two psychiatric consultative examinations that Plaintiff attended with Dr. Bagner on September 30, 2011 (AR 312-15) and November 30, 2012 (*id.* 322-26). Dr. Bagner indicated that Plaintiff has mild to moderate limitations in his ability to appropriately interact with the public, coworkers and supervisors. (AR 315.) He also found his "ability to respond to changes and work pressure in a usual work setting was moderated limited." (*Id.*) These finding are not inconsistent with Dr. Eklund's opinions of February and March 2010 (even though those opinions pre-date the current application period) and on this record, Court finds no evidence that the ALJ improperly discounted or rejected the opinions of Dr. Eklund.

Accordingly, the Court finds the ALJ's assessment of the medical source opinions to supported by substantial evidence and free of legal error. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1995).

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 8, 2016

                                                      /s/ Karen L. Stevenson
                                                     KAREN L. STEVENSON
                                       UNITED STATES MAGISTRATE JUDGE